1-6-1-0-4-9 Jason Boudreau v. Steve Lussier et al. Mr. Lewis, good morning. Take your time. May it please the court, Patrick Roth to the appellant, Jason Boudreau. May I reserve three minutes for rebuttal? Go ahead. Thank you, Your Honor. The summary judgment record proves that the ATC defendants violated the Wiretap Act by installing and operating the screen capture software, known as SSP, without Mr. Boudreau's consent. Now, the record demonstrates that Mr. Boudreau has satisfied each element of the Wiretap Act claim. I'd like to go directly to Contemporaneity. Can I just ask you a question that I've had, maybe I should have looked it up myself, but was this issue of the legality of the search litigated in the criminal case? So, just to start, I have a passing familiarity with the criminal case. I've spoken with Mr. Boudreau's public defender, but certainly the scope of the civil case is a little bit different. I do believe it was litigated in the criminal case, but I suppose... Well, I believe he was found guilty, then that was found against your client. I believe he pleaded nulla contendere to the charges, so I'm not exactly sure how the outcome of the criminal case worked its way through. Does that have any bearing on this case? The fact that he basically litigated this issue before, or at least challenged it, accepted it? In the 1983 version of this case? Yeah. I don't believe there's any kind of collateral estoppel or preclusive effect of the criminal proceedings. And I was prepared to accept Mr. Boudreau's arguments on the record as to the 1983, or rather his pro se briefs on the 1983 issue, but to my knowledge, no, the answer is no, there's no preclusive effect of the criminal proceeding. Okay. Thank you. I'm sorry. No, that's fine. I'll proceed to the Wiretap Act claim, if that's okay with your Honor. So I would like to go directly to contemporaneity, which is where the district court rested its decision, and where I believe there's some unresolved tension in the case law that results from the application of this 1980s statutory language to modern technology and the Internet. And first of all, this circuit has never ruled that courts must apply a hyper-formal test to distinguish information protected by the Stored Communications Act on one hand, so electronic communications in electronic storage, and on the other hand, Wiretap Act electronic communications, which involve a transfer. And, Councilman, sitting on bunk, this court acknowledged that there is a morass of the various approaches to addressing this question. But it suggested, and I think this is important, that a pragmatic and a functional analysis should apply to answering that question. The court cited its earlier ruling in PharmaTrack, saying that the concept of a contemporaneity or a real-time requirement, which involved in other factual contexts, may not be apt to address issues involving the application of the Wiretap Act to electronic communications. So just so I get to your point, if I stand in front of your computer with a Kodak camera and I take pictures of it, am I intercepting the transmissions? You may be. You're getting closer, if we imagine the hypothetical. So a yes, no? Well, there's a few different arms of the Wiretap Act element, so I'd want to know what your intent was, first of all. Second of all, I'd want to know whether an interception... With respect to contemporaneity. So with contemporaneity... If I'm looking at your computer screen, whatever comes up on the screen, when I see the screen, I take a picture of it. Have I intercepted a communication? So the cases suggest, and this case certainly has a factual setting, where the interception was triggered by... So it was instantaneous in the sense that it was triggered by the use of certain keywords. So if your camera behind my screen is being triggered by the use of words that make it incredibly likely that you're getting electronic communications while it's transferring... But the time the picture's taken, it can't be while it's transferred, even if it's triggered while it's transferred. Just literally, it can't be, right? It's just because the electronic communication has a very speed of light, right? And that is exactly why we're... So you're saying, yes, if someone takes a picture of a screen, when they take the picture of the screen, that's contemporaneous. It may be, yes. You keep saying may. Well, I'm asking, is it? Well, in this case, it is. And there's adequate circumstantial evidence that a jury could have looked at without the... Even though the picture is taking a communication that has already arrived. So two points, if we're pressing on the point of whether it's already arrived. Two points on that. First of all, it annihilates the meaning of the statute to me. If the workaround to what Congress has said about the Wiretap Act is that you can just wait for it to appear on a screen and give all the communication and all the information that a jury wants. But that's stored. That's just covered by the Stored Communications Act. Well, the further part comes from Councilman. Which in a very logical... In Councilman, the storage moment occurred while it was in transit. It was temporarily stored when it went from A to B. You're saying we should also read to B that after it got to its destination point and was there, it's still in transit. Even though you could just say, no, it's stored at that point. It's permanently stored. It's not going to be transferring anymore. And then you just go under the SCA. What's the problem with that? So if it's stored because it's just simply in that momentary, temporary memory so it can appear on the screen and a human can understand it, first of all, I think that that is incidental to the transmission of electronic communication, as in Councilman. And I recognize that this isn't exactly that factual setting, but I think it's a logical extension of that. And second of all, that would just be a total workaround to what I think Congress was trying to get at. Because even if there's a light-speed instantaneous gap between the moment that the photons are being transmitted across the wires as an electronic... But you can see the line-drawing problem that your rule would create, which is that, okay, so now it's there for ten seconds. Now it's there for a minute. Now it's there for a day. Now it's there for three days. And we'd have to make up some rule about how long it can be there after it got there and still be pretending it was still getting there. Surely the courts have wrestled with that question, and I do appreciate that. But I think in this case, first of all, the court need not address it because our position is that under any reasonable articulation of that rule, we would win, and we would win reversal at this court. And I just want to, in my remaining time, I would like to turn to the actual evidence and the trial in Mr. Boudreau's case, if we had gotten there, and if we do get there, would show that every screenshot has the exact same time on the stamp of the screenshot and the desktop computer of Mr. Boudreau's computer, showing that there was instantaneous interception. And those screenshots show the loading data. And I appreciate the point about the difference in time there, but the web browsers show that data was crossing the line. There was information going from the computer to the Internet. And further, there would be the testimony of Mr. Sorrell regarding how he configured the software and how he triggered it using words that were very likely to capture electronic communications in progress. I have just one question which you may not be prepared to answer, which is, before you sit down, that concerns an argument in the pro se brief. Concerning the password-protected files and whether an employer can consent to the government searching an employee's password-protected files on the computer, in the absence of, as I understand his contention, in the absence of there being any agreement that there will be access even to password-protected files on the employee's computer. He cites some case law, as far as I can tell... Where the employer owns... Correct. Exactly. It's on the employer's computer. He cites some case law suggesting that in that circumstance, under Matlock, we would not treat the employer as having common authority, even though he would have, obviously, ownership rights, just like an owner of a house might not have the power to consent to a particular bedroom, being looked at, if it's clear enough. Could you just discuss that? Well, at a high level, we used our supplemental brief to explore the Wiretap Act issue primarily. I believe Mr. Boudreau's argument is that there's an expectation of privacy point, which, to me, does strike me as it falls logically from the Supreme Court's ruling and this Court's ruling regarding things that are of the nature of a room in a house and are freighted with a greater expectation of privacy, even if we're in the employment context, where the employer has ultimate control over, let's say, the house, right? But the room has a locked closet or something like that. I think it's more... There are a number of circuits who have just rejected that argument. Is that true, or have they rejected it? I thought they rejected it when there have been evidence of agreements between the employer and the employee with respect to the type of access the employer will have to the computer. And here, I guess, what stands out to me is, if I understand his argument, he's saying there's just no evidence that there was any such agreement of that kind in place. I'm wary of getting too far out over my skis on an issue that I'm not totally familiar with. I would be happy to address this in a 28-J briefing. Just a letter? We can just quickly... We'll decide if there's going to be a letter afterwards. I'm happy to extend a supplemental briefing in any direction. We don't want you extended out over your skis. This is not a ski jump competition. Thank you. I took a couple of minutes from you in my question, if you want to take... It would be best if on rebuttal, I can just have a few more minutes. All right. Okay. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Douglas Geron and I represent the Automatic Temperature Control Inc. defendants slash appellees who are Stephen John and Donna Lucia and Stephen Sorrell. With me are Christopher Hullquist, who represents the City of Cranston defendants, and Mark DeSisto, who represents the City Board defendants and Detective Pettit. And given that the Appellants' Counsel has focused its supplemental briefing on the Electronic Communications Privacy Act or ECPA issue, which affects only my clients, we've agreed that I could have virtually all of the time for this argument. But they're here if the Court has any questions, for example, on the Fourth Amendment or any other issues that pertain to it. You're also a defendant on the Fourth Amendment claims as a conspirator to it, is that right? Yes, Your Honor, that is correct. And that issue, I'd have to say, was more or less glossed over on below because I think it was more or less rejected out of hand without any real briefing or argument. Just on that, I know you want to get to the ECPA issue, but on this issue, which I think is a fairly significant issue about what kind of privacy protection employees have with respect to their employers on employer-owned computers when they create password-protected files, that was, as I can tell, briefed up fully in the pro se briefing. I mean, it's got all these cases on the sides of it. It's not like it's not developed. No, I understand that's Mr. Boutreau's position, representing himself, is that he steadfastly claimed from the inception that he had an expectation of privacy. And I'm glad that Your Honor has raised that because, in my view, that may be at the heart of the whole matter here. It's been briefed on occasion below by the ATC defendants, and I raised it again in our supplemental brief towards the end, and I was prepared to address it again today. And it is clearly the position of the ATC defendants that the plaintiff had no legitimate or reasonable expectation of privacy in using automatic temperature controls computers, certainly in the circumstances of this case, for the use that he put to it. I understand that you would say from contraband, fine, but with respect to a password-protected file generally, the only argument the district court seems to make is an argument that because the employer owns it, that's the end of the matter. But under Matlock, that just seems not obviously right. Well, Your Honor, I'm not sufficiently familiar with Matlock to address that particular case. What I would say here is, first, let me just step back a moment. These cases, I think the case law makes it pretty clear, are simple, where the employer has an extensive agreement or waiver or something like that that the employee signs. That makes it real easy. It becomes a little less clear, I concede, when there is not such an agreement. But the record here shows no such agreement? Well, that's correct. There is no express waiver signed by the employee agreeing that the employer has the right to do virtually whatever it wants. That's not what we're really talking about here. Is there any case in the absence of such an agreement that definitively rules for you that you could point to? Because as I read the cases, they all seem to have some agreement or such like that. They all seem to have some sort of agreement. There may well be cases to that effect. I haven't researched it recently enough to be able to cite one for you. What I can tell you. Counsel, we briefly conferred on this issue. Why don't you each submit 28 J letters and then let's move on. Okay. Okay. Yeah. So the plaintiff's supplemental. I'll check on counsel for the other defendants as well. The plaintiff's supplemental brief raises many technical arguments to all of which ATC has responded in its supplemental brief. We would primarily rely on our original supplemental briefs on the EPC and the ECPA issues. But there are a couple of points that I would like to emphasize. For at least two reasons, the ATC defendants contend that the determination of this appeal is fairly straightforward and doesn't require an extended in-depth analysis of the ECPA or its application. First. Could you get to this question that Judge Barron was asking about earlier about start with the Kodak hypothetical and then move on from that? Okay. Well, I think that that particular question touches on the or goes to the heart of what is an electronic communication. An electronic communication is. I'm sorry, Your Honor. I believe his point was interception.  Could you move to that, please? An interception involves the transfer, the capture of data that is being in transit. Where did you get that definition? That comes from the act itself, which the definition. It's the definition of electronic communications. Yes, it is. So you're saying for it to be an interception of electronic communication, it has to be an interception of a transfer. That's correct. Because under 18 U.S.C. 2510-12, which is the definition of electronic communication, it's any transfer of signs, et cetera. So that it's clear that unless a communication is in transit at the time. What you just read says any transfer. That's right. A transfer. So in other words, the data has to be in transit or being transferred. You added some words there. Maybe they're in the statute, but you added some words to what you just said. What I'm saying is that for there to be an interception, the data, referring generally to data or information, has to be in the process of being transferred from one place to another. So if the capture doesn't take place during the transfer while the information or data is in transit, then it's in storage. And capturing while in storage is not an interception under the ECPA. As Your Honor, Judge Torello noted in the Councilman case, you indicated in your dissent that it's not by coincidence that every court that has passed upon the issue has reached a conclusion opposite to that of the majority in that case, that the Wiretap Act prohibits interception of electronic communications. The prohibition does not apply when they are contained in electronic storage. So that's the heart of it here, is that the screenshots, the pictures of what the plaintiff was seeing on his computer at any given moment, were all while information was in storage, not in transit. And for that reason, none of the screenshots constitute an interception. The appellant has taken the broad, in my view, legally incorrect and factually incorrect, that apparently every screenshot is an interception. And that's just far too broad, and it's not consistent with the law. So in other words, if a screenshot does not depict a transmitting communication, it's not an interception. There are a couple of cases which I think are instructive. Just so I understand, if I get it right, a screenshot could never... What would it look like for a screenshot to be depicting a transmitting communication? What would you see? What would the screenshot depict? I'm not sure what it would depict. Right, because the screenshot is going to always be of the thing after it's transmitted. It's either going to be a screenshot of the thing after it's been transmitted, after it's been received, or before. Right, it's going to be like the voicemail, right? The voicemail is not in transit, it's just there. That's correct. But you listen to... otherwise it just doesn't work. Counsel, that's a rather broad position. The district court here, the ultimate holding is that the plaintiff did not meet his burden of providing sufficient evidence that the screenshots here were in fact interceptions. I don't know that we should be in the business of saying that screenshots are always or are never interceptions. And I agree with you, Your Honor. That was not the answer you gave to Judge Bell. Well, what I was referring to was the cases that talk about, specifically, for example, there are several cases that talk about how emails can almost never be intercepted. It's virtually impossible for an email to be intercepted. And that was, I think, the point you made with respect to voicemail. It's either before or after transmission, unless it's captured on a server as in councilman while it's in transit. But I agree with you, Your Honor, Judge Lynch, that the district court didn't have to reach that question because the plaintiff just totally lacked any evidence to get by the summary judgment hurdle. All right. The plaintiff didn't put on any expert testimony. I don't know that we also want to be in the position of saying that you always have to have expert testimony or you never have to have expert testimony. It's just here the district court noted the failure to provide more through expert testimony than the sort of bare bones argument that was presented. So are you asking us to come up with a rule about expert testimony as to what is an interception? No, Your Honor, I'm not asking you to come up with a blanket rule. I think what the district court did was precisely correct, is that it depends on the technology that's involved. Just so I understand what's at stake here, your position is, unless I'm misunderstanding you, if it's a millisecond after the transfer is completed, that the screenshot occurs, it can't be an interception. I think that's my position. So what the evidence would have to show is that what he failed on was failing to put in evidence that it was literally contemporaneous as opposed to even a millisecond after. That's correct. And that's where, in this particular case, with this particular technology, the expert testimony was essential. Clearly there are certain... Just so I'm really clear, do you agree that on this record a jury could reasonably find that the picture did occur a millisecond afterwards without an expert? No, I don't even agree with that. You don't even agree with that? I don't even agree with that. So a reasonable jury could infer something about there having been a transfer that a picture was taken of relatively recently compared to when it was transferred, yes? I suppose if a screenshot showed an e-mail that the plaintiff was reading, for example, one could infer that... But this shows loading pages. I'm sorry? This shows loading pages. This shows loading pages, Internet websites as opposed to e-mails, but the loading pages are either not loaded, in which case they're not showing anything, so there's no interception, or they might show, for example, a URL, a uniform... Well, here they're partially loaded. They show like Yahoo, they show some text and things like that on it. Well, I think that's one of the problems with the plaintiff's lack of evidence is that we really don't know what any of the screens show. I mean, we can look at them and we have some idea, but in my view it's all conjecture without the assistance of someone who really understands what System Surveillance Pro is and what a screenshot is and how it functions, how they interact with each other. Well, I understand that as your in-transit point. That I definitely understand. I'm having trouble understanding why it wouldn't be reasonable to infer that this was pretty close after a transfer occurred, since it shows a picture of a loading webpage. Well, assuming that's a valid inference that a juror could make, it doesn't help the plaintiff in this case because it doesn't matter under the case law whether something happened ten minutes ago or three days ago or five seconds ago or three-tenths of a second ago. If it's after the transfer has been completed, then it's in storage as opposed to... So you want us to adopt an instantaneous, contemporaneous, whirling way the other circuits have. Yes, Your Honor. I think that... And to date we have not yet opined on that issue. I agree you have not opined because you haven't had the opportunity. We sidestepped it in the En Blanc case. Correct. All right. Thank you. Thank you. Yes. Yes, Judge. Great. Thank you. Milliseconds. Okay. Sorry for the milliseconds. So direct evidence of an electronic communication in progress is nearly impossible to prove. And certainly I believe I heard a concession that a screenshot can be an interception under the Wiretap Act, which makes sense given the definition of context. Oh, I didn't hear any concession. I heard a retreat to what the trial judge actually held. So I guess the point that I want to press on is that we don't need to see direct evidence of the electronic communication in question here. Every circuit that's looked at, the burden of proof for an interception under the Wiretap Act has found that circumstantial evidence is adequate. But that's true if occurring slightly after still can be an interception. Your problem is you don't need any more evidence than you've got. If occurring slightly after can still be contemporaneous or can still be an interception. If the issue is did it occur during, there's no evidence in the record that would permit us to conclude that the screenshot occurred during. Well, there's strong circumstantial evidence if you look at the bulk of the screenshot record and you get the additional testimony from how it was configured to work. I think to step back a little bit from the contemporaneity requirement, let's remember that it's not in the statute. It's effectively a rough proxy that courts have been using to try and distinguish electronic Wiretap Act information from Store Communications Act information. And I think focusing on the term transfer in electronic communications is helpful, but applied to the extreme where if we just have the evidence doesn't show a seconds notation or even a millisecond notation, there simply won't be a case like that. This is as strong circumstantial evidence as you could get on the interception. It's not that that is unprotected. It's just it's protected under the Storage Act and not the Interception Act. True, but obviously with a different level of protection as Congress has so far. If I listen, you're on a phone call. If I listen on your end of the phone call, the entire phone call, by just listening, I'm not intercepting it, right? Well, I would just turn to the statutory definition, and I believe you are. Yes or no? Yes, you can be. Okay. Could be. You could be. Depending on what? Well, so to turn to the case saying that that's wiretapping, I'd be surprised, but. Well, an intercept means the oral or other acquisition of the contents of any wire, electronic or oral communication. Yeah, and the communication is something that's transferred. So I'm just saying I would be surprised if to get a warrant, the police to get a warrant for a wiretap, has to get a warrant when all they're doing is listening on one end of the phone. Well, under Title III, I'm not sure how the sort of breakdown between that has grown up through the statutes, but oral communication is defined in the statute. It's within the definition of intercept, and it's certainly a viable argument. I think just to return to the Kodak hypothetical, I take the Court's point that that presses on how close we need to be to the moment of interception. I'd just return the Court to the fact that Armatrack announces a broad understanding of what electronic communication is. The statute defines contents broadly by reference to the purport of or any information concerning the substance, purport, or meaning of that communication. And there's no statutory or textual indication that we have to apply the hyperformal rule that some of the other circuits have applied. And here, I'll just return the Court to the point that it need not decide the question left open by the en banc court and councilmen because we can assume that a version of that rule applies and is satisfied by this record. To go to the expert evidence point, I think just to build on Judge Lynch's question, this is common technology being used in a relatively common way? It may be common to those in college. That doesn't mean it's common to the entire population. Furthermore, there are urban-rural differences, and you're dealing with a bunch of judges who've been here for a long time. And we can use e-mail, but we don't very often use this technology. Point taken, Your Honor. But I'd just go back to the point where ought the circuit be in the business of deciding which technologies need an expert as a rule, as a simple matter of all going forward. Generally, that's left to the discretion of the trial courts. And more importantly, at the summary judgment stage, this Court, when it affirms an adverse summary judgment decision just on the basis of no expert, it's got to be clear that an expert was needed to reach the jury. Should we expect an order on the 20HA? No. You have the order. You're right. We'll talk. Would it be focused on the password question? Yeah. Thank you, Your Honor.